Thank you Michael. Good afternoon. Good afternoon. I'm pleased now to be sitting with Judge Cowan and Judge Greenberg who is participating by audio, by phone system. Judge Greenberg can you hear us? I can hear you. Can you hear me? Yes, we hear you loud and clear. Yeah, this is a public proceeding right? Because the law clerks are in here. It is a public case of Weksheiser v. Pocono Township and Mr. Hoffman for the appellant. May it please the court, your honors. My name is Stephen Hoffman. I represent the appellants Frank Hess and Henry Bangle. I would request three minutes for rebuttal. Approved. Your an elected office or the privileges that go with that office. There is nothing extraordinary and certainly nothing unconstitutional about one elected official retaliating against another elected official. It happens in Washington D.C. We'll see it happen in January when there is a change in committee chairmen. It happens in Harrisburg and it happens even in the Poconos. Does the roadmaster have to be an elected official? The roadmaster does not have to be an elected official but Pennsylvania law at least under the second class township code which is the only applicable law permits a supervisor to serve jointly as both the legislator as well as an employee of the road. What does the roadmaster position pay? The roadmaster position paid I believe was around $50,000. Full time employment? It was a full time employment. Now you couldn't have in Congress retaliation by saying we don't like Congressman Smith so we're going to preclude Congressman Smith from taking office and getting paid. And that's the right to the office or the privileges of the office. Certainly the ability to vote, the ability to receive pay, the ability to attend meetings, the ability to attend meetings that you cannot retaliate against someone and remove them or not permit them to serve their office. But anything short of that is certainly fair game in the political world. What case ever said that? I mean where did that get articulated? Well if you look we cited for instance the 5th Circuit in Rush Aldridge. In the 5th Circuit they talked about the fact that the council member in that particular case was also a member of a transportation committee and she opposed what the majority of that transportation committee wanted and they removed her from the transportation committee. And the 5th Circuit said basically as long as you don't remove her from her elected office, it's fair to if she's not upholding the will of the majority, it's fair to retaliate against her. It's fair to take that appointed position away from her. Is that appointed position a compensated position? It's an uncompensated position. At least there's nothing in the record in the case in Rush Aldridge which indicated it was a compensated position. But I don't think it makes a difference in this case because. Well why should it make a difference? I mean you have a situation where I mean why shouldn't Garcetti apply here? This person is being retaliated against in his position as an employee. Correct and I think Garcetti does apply here because Garcetti talks about first of all Garcetti talks about employment speech but it talks about that employment duties. It talks about citizen speech in their official duties. And so he was not making citizen speech. He was making speech as the elected supervisor. All the things that they are alleging he did was as a supervisor. So his role as a supervisor was brought. It included because they made the decision. But in Garcetti it was the assistant DA that speaks as part of his official duties as an assistant DA. And the things that they have alleged that Mr. Wertheiser said was that he opposed the appointment. Did he speak as roadmaster? No he clearly spoke as a township supervisor. And the three things they have alleged he spoke at was as township supervisor. But you can't parse out his role. His role because the Pennsylvania legislature has allowed this hybrid position of both elected supervisor and appointed roadmaster. It's one position. How is this case different than Squire's? Because Squire's first of all Squire's predates Garcetti. And Squire's what you talked about in Squire's only dealt with after a jury found that there was some retaliation as to whether or not the employee should be sent back. The point to me from Squire's was that it was recognized under those circumstances that a township commissioner could not be retaliated against by taking the roadmaster job away from him. That was implicit in it. Clearly that's what the jury found. But the issue on appeal wasn't these issues that we're dealing with. The factual similarities to Squire's I can't rebut that. But the legal differences between Squire's in this case is substantial because Squire's didn't deal with the issues of liability. Squire's only dealt with the remedy that should be afforded to Mr. Squire's. So this court never has had this opportunity to address this particular issue. But why can't we say if someone wears two hats they wear an elected hat and they wear an employee hat you can discriminate against them if you don't like their politics but you can't discriminate against them if they're wearing their employee hat. Because like an employee, just like as an employer, the township when they're acting as this legislative body, they have to reappoint this township roadmaster every year. This is an important position up in the Poconos. The roads are vital for the economy. Was there any contention that he was not performing well as a roadmaster? Yes, there was contention that he wasn't. It's not in the record because we haven't gotten that far but one of the allegations that would be made by the defendants is that he wasn't performing the job as roadmaster up to the point that they would have liked. That's not before us here. The issue here is he hadn't elected a position. They didn't like his elected politics. There's nothing that ever said that he wasn't doing his job and they can't because they didn't like his road politics. They're answerable to the people. The majority is answerable. Each of them are answerable separately and together and they, just like in Garcetti and just like in Connick, the Supreme Court talks about as an employer you have a right to an effective workforce. You have a right to efficiency. If the majority of this board is being told by the minority who's serving on as the roadmaster, we don't like the person you've put in charge, the Township Administrator. You shouldn't have a Township Administrator. Except that they say they don't like him because of his politics. They didn't say they don't like him because he wasn't doing the road job right. It wasn't because of the speech that was made by Mr. Wertheiser was he didn't like the fact that they were paying, in essence, two people to do the same job. But that was the determination. Yes, Mr. State Councilor, this is Judge Greenberg. When I was in the practice of law, I used to represent municipalities and the way things were, one political party controlled practically everything but one time I was the attorney for a township and the other political party took control and no one suggested I hadn't done my job correctly but I didn't even show up for the reorganization meeting because I wouldn't have lasted very long. I mean, didn't they have a right to kick me out? It never entered my mind they didn't. Absolutely, and that's what's happened here. The majority has a right. Yeah, but is there a difference? I was an official giving legal advice to the township government and without getting involved in political parties, let's say that the majority started with an R and then a party starting with a D got in. Why did they have to rely on me who had been appointed in a political appointment to continue to be the attorney? Because under the Pennsylvania Second Class Township Code, attorneys, engineers, and road masters all treated the same. They're all reappointed every year and these two members of the majority, so that they can fulfill their mission, have a right to have the person as the road master, someone who believes in their philosophy in terms of repairing roads, addressing issues on roads, budgeting... Oh, that's a little hard to swallow. So you're equating a road master to an attorney and I thought that in some question, maybe you had this wrong, but I was thinking of a road master as more of a mechanical thing. You know, you've got to fix the potholes. It's more than that though. It's more than that and he's in charge of the people that fix the potholes and again, I believe that the majority has a right for purpose of effectiveness... And you are saying that he could be fired in retaliation, but he supported a candidate, an opposing candidate for the township commissioners. He could be fired as road master then? I would say yes, but that's a more difficult question because if his speech was made at a political event, it's not in his official capacity. All the speech here was made in his official capacity as a supervisor. Under Garcetti, if it's in his official capacity, then it's not protected. If his speech was made... If there's not a political purpose behind the position, then speech made through supporting an opponent may be protected, but we don't have a situation where his speech is protected because it's all part and parcel of his job. And that would be because the position of road master isn't a policy making position or a close political advisor. It wouldn't fall under the LRUD? Correct, but that's different than this situation. I see I only have about a minute. Even if you disagree with me, your honors, that there is a constitutional right here. My clients are still entitled to qualified immunity because the parameters that have two cases that frame the issue, bond, has never been decided for anything other than you can't exclude a public official from their position based on their speech. And Garcetti has never been applied or no appeals court has ever said that Garcetti doesn't apply to elected officials. The only two appeals courts that have talked about it in this context, the Sixth Circuit talked about it in the, excuse me, the Eighth Circuit in the Parks v. Horsehead case, and they put in a footnote basically saying Garcetti does apply to elected officials. The Fifth Circuit in Ranga addressed it in a panel opinion, although that case is distinguishable because it wasn't intra-legislative retaliation. It was a district attorney bringing criminal charges, and ultimately the Fifth Circuit never addressed it. You have in front of you district courts throughout this country that are basically split down the middle. The U.S. Supreme Court said it has to be beyond debate. This issue isn't beyond debate because it's split. Thank you, your honors. Thank you. Oh, Judge Greenberg, any other questions? No. No, it's fine. I heard it. Good afternoon, your honors. My name is Cletus Lyman. I represent Harold Wertheiser, plaintiff below, and appellee here. Could you address first off what last was addressed by your friend across the aisle? This case has never been filed in the Supreme Court. There's never been an adjudication by the Supreme Court on this very issue, and the district courts and the appellate courts are split all over the lot as to whether or not there's immunity. Why should this case be the subject of qualified immunity? There are several district court opinions. None of them come close to this case, which involves speech by an elected representative of the people speaking at a duly convoked town meeting. This is not a miscellaneous elected official, and Bond is squarely on point. And the cases that are relied on by my colleague on the other side of the aisle do not discuss Bond. And it is the decision of the Supreme Court of the United States, and Judge Caputo relied on it entirely in his line of reasoning. You know, Judge Callan raised the question before I was going to ask the same thing. Is it so clear that to me, maybe I'm just a person who dealt with politics day by day, that the majority party ought to be able to name the top administrators. And this man, it may not seem that important to us, but this is apparently a very significant position up there, and why shouldn't they be able to name him? And if they throw him out because they don't like him politically, there's always the next election. Well, it is not a position of the sort that would get around the holding of, say, a party can't dismiss people who are members of the newly out party. Mr. Werkheiser was a hands-on roadmaster with a CDL Class A commercial operator's license and the ability and experience to operate large construction equipment. This was not for him, as defendants assert, a supplemental employment. Working on these township roads as an employee of the township, which was living for 18 years until the alleged retaliation, he worked his way up from the road crew to the position he held as of January 2013. One thing I want you to know, we've all read Bond. Bond doesn't stand for what you cited. Bond stands that you can't interfere with an elected official's elected position. Here, there's no interference with an elected position. He's still an elected official even though he's canned as roadmaster. They terminated his roadmaster job. So Bond doesn't stand for what you think it stands for. It stands for the proposition that the other side is arguing, that there is no protected constitutional right of an elected representative of the people to speak on matters of public concern. No, no, that's not their position. Their position in reference to this case is they are not trying to remove him from his elected position because of his First Amendment speech. Their position is he can be removed from his non-elected position by reason of his speech, but they are not claiming that he can be removed or his elected position to be influenced either way. Look, I read Bond twice or maybe three times. That's the best case you got, but it's the wrong subject. Bond says you can't interfere with an elected official's elected position. They are not interfering here with his elected position. They're interfering with his roadmaster position, which is not elected. So where do you stand if we don't agree with you with Bond? Well, respectfully, I disagree with your reading of defendants' brief and the positions that they took in the lower court. They just said there is no protected interest in speech because of Garcetti, because someone is speaking in their official capacity. But I would just put to you this situation, just as there is a panel of three judges, there's a panel of three supervisors, and they're all necessarily citizens of the township. And they are entitled to speak with impunity. And this is a very old concept which predates the First Amendment. It's a concept in the Speech and Debate Clause, and the federal Speech and Debate Clause is taken verbatim from the Pennsylvania Constitution. This has nothing to do with the Speech and Debate Clause. Obviously, we're not talking about the Congress or the Pennsylvania legislation, but we're talking about a small legislative and other... What case have you got that says that an elected official cannot be discriminated against by other elected officials when it is not interfering with his elected position? It's the entire concept of freedom of speech and freedom from being retaliated against when you have a protected speech. Let me suggest another thing. Someone is an elected official of the township acting as a supervisor. Can the other supervisors raise his tax assessment because they don't like what he's saying? We're going to take away a $50,000 a year position. Please, please, don't interrupt the judge. What you're saying is they can't interfere with him in an appointed position. Now, my response to you is these people are in politics, and politicians discriminate against people who are not of their political thinking, but what case do you have which says that they can't discriminate against someone that they can't discriminate against someone in his non-elected position? Well, the cases that come to mind that are relevant, I don't know if they're exactly on point, are Elrod v. Burns and Branty v. Schenkel. They're cases which hold that because somebody is a Republican and the Democrats take over that they can't be fired from compensated positions in the state or the municipality. The facts of those cases are vastly different than what we have here before us today, sir. What kind of positions did they hold? In other words, what kind of positions were they in when they were discriminated against? Well, Elrod v. Burns involved a deputy sheriff of Cook County. I can't recall what position was involved in Branty v. Schenkel. Your case was the Squires case, was it not? That is correct. And it's factually the same. Mr. Squires was the roadmaster of Mill Smithfield Township in the same county, Monroe County, Pennsylvania. And as a supervisor... Now the question that came up on appeals, not necessarily with the remedy but was the question of protected right litigated in that matter? Well, it was certainly litigated in the district court. And Judge Pollack discussed, I think with approval, the calls that were made by Judge Kozik in the district court. And in that case, Mr. Squires was what you might say somewhat of a vocal, not anti-development member of the Board of Supervisors, but he didn't go right down the line with what the Pocono developers were wanting to do. And in particular, there was a big bond issue that was to be floated for a sewer plant in the township. And he didn't feel... He felt that this looked like a giveaway to the developers that the financing of it wasn't being handled appropriately. So he spoke out on that and he lost his job as roadmaster. Exactly. So your theory is that your client had a clearly established constitutional right and because he was exercising that right, it was unconstitutional to retaliate against him and that this was all clearly established. That is the theory of the case. That is right. Well, where in the Supreme Court has Garcia ever been applied to an elected official who was discriminated against in a non-elected position? That's the question. Because the district courts and a few courts of appeals are all over the lot on this. And your adversary says that because it's unclear, he's entitled to bond immunity. Well, they all missed the analysis under bond. Well, as I explained to you before, bond did not deal. It dealt with someone who was discriminated against as an elected official. This case, he's being discriminated against. It's not influencing his elected position at all. It's influencing a non-elected position. Well, respectfully, I would say that taking away a $50,000 job, which was this gentleman's career, is punishing him for exercising his First Amendment rights as an elected supervisor. In a situation like this in a second-class township in Pennsylvania, the supervisors can take away $50,000 in compensation, take away somebody's livelihood, take away the work that they like to do and are trained and capable of doing. That affects their right of free speech. Suppose the Supreme Court for a while was holding that before you could go any further, you first had to establish that there was a clear constitutional right, and you couldn't sort of check it out by saying, well, even if it wasn't clearly established, even if it was such a right. But the court has reversed that now and has made it clear that you can take the questions in either order, depending upon what seems appropriate. And after you hear this argument, you wonder how clearly established it was. I mean, why are we here? I mean, the cases are all over the place, so can you really say it was clearly established? I think I can't do any better than Judge Caputo did. He took the cases head-on, he distinguished them, and they simply failed to deal with the established right at the Supreme Court level. This case is different from most, if not all, of those cases. This was speech of an elected representative of the people. We're not talking about an elected dog catcher or something of that sort. It was a duly convoked meeting of a body which was having the power to set budgets and has the power of taxation. According to my research, this right under these circumstances goes back to the Glorious Revolution in 1688. It was one of the concessions that the monarchy made to Parliament, which is referred to in a discussion in Kilbourne v. Thompson, 103 U.S. 168. It appears that Queen Elizabeth and her two successors punished the exercise of speech in Parliament, but then it was, as the Kilbourne case says, it was soon clearly perceived to be indispensable and universally acknowledged that people must have the right to speak freely in representative bodies. The Supreme Court case says, By consequence, whatever is done within the walls of either assembly must pass without question in any other place. For speeches made in Parliament by a member to the prejudice of any other person or hazardous to the public peace, that member enjoys complete impunity. Impunity means freedom from being punished for what you say. All right, thank you very much. Judge Greenberg, any other questions? No, that's enough. Okay, thanks. We'll hear Mr. Hoffman on rebuttal. First of all, there's nothing in the record that the supervisors, the majority supervisors, did anything in this case to deprive Mr. Werkheiser of his elected position. The only allegation has to do with his appointed position. And with regards to the loss of Mr. Werkheiser's job, I would direct your honors to the Supreme Court. Why shouldn't this then be a question that's analyzed under the Elrod and Brandy line of cases? Because he's an elected official. He ran on his partisan affiliation. He serves because of his partisan affiliation. He holds office because of his partisan affiliation. Well, if the township roadmaster is of the level of position that you can fire for political reasons, then he could be fired. But if it's not, why should he be punished? This may be a different case if he were a career roadmaster. But he is a roadmaster-slash-elected official, and they have a right because his speech was made in his capacity not as a citizen, but his official capacity. I would direct your honors to the Camacho case out of the Second Circuit. In that case, the Yonker City Council fired a staffer to an elected official because of the votes that staffer took. And the Second Circuit analyzed it under the elected official's First Amendment rights and said that the staffer and the elected official had no First Amendment rights for speech that they were making in their legislative capacity short of excluding the elected official from his office. This court adopted, at least in a non-presidential opinion in Zimmerlich by just last year, where it says you do not want to subject the courts to all sorts of politically motivated conduct. But the decision in Zimmerlich dealt with the question of whether the adverse action was such as to chill the First Amendment rights. It didn't say there was no First Amendment rights. No, but when you're speaking as a legislature, you're speaking in your official capacity. You're not speaking as a citizen. So therefore, under Garcetti, the board has the option. But isn't the premise of Zimmerlich that if the adverse action is such that it could chill the exercise of First Amendment rights, that it would be actionable? But if you look at Bond and you look at the cases we've cited of the Fifth Circuit, the Blair case out of the Ninth Circuit, the chilling effect on a legislator is the loss of the elected position or the privileges that go with that position. Serving as a roadmaster is not a privilege of that election. If you took the person's pension away, that wouldn't be actionable. That may be, because if the statute is a privilege of the office. If you took away his enumerated pension and the others got to keep it, yes, that would probably be actionable. But taking away an appointed position is not actionable. Thank you, Your Honors. Judge Greenberg, any questions? No, that's all. All right, thanks. And, Judge Greenberg, we'll conference this tomorrow if that's all right? Yes, so we can just terminate the conversation today, then until tomorrow. Until tomorrow, when we resume. Thank you very much, gentlemen. Thank you. Thank you very much. We'll take the matter under revision. Well argued. Thanks. Thank you. Thank you. Thank you. Thank you. Thank you.